Filed 11/18/21  P. v. McMillan CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,  Plaintiff and Respondent,  v.  GIOVANNI DEVON MCMILLAN,  Defendant and Appellant. | D078064  (Super. Ct. No. BAF1600043) |

APPEAL from a judgment of the Superior Court of Riverside County; Alfonso Fernandez and James S. Hawkins, Judges.  Affirmed and remanded with instructions.

Kimberly J. Grove, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Michael Pulos and Juliet W. Park, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Giovanni Devon McMillan of first degree murder (Pen. Code,[1] § 187, subd. (a)).  It found true allegations that McMillan committed

---

[1]     Undesignated statutory references are to the Penal Code.

the murder while committing a robbery (§ 190.2, subd. (a)(17)), and personally and intentionally discharged a firearm, causing death (§§ 12022.53, subd. (d), 1192.7, subd. (c)(8)). The trial court sentenced him to life in prison without the possibility of parole, and imposed a $10,000 parole revocation restitution fine under section 1202.45, subdivision (c) but suspended it "unless parole is revoked."

McMillan contends the trial court erroneously (1) failed to instruct the jury on its own motion about how to evaluate the accomplice testimony of two witnesses, S.W. and S.B; (2) instructed the jury regarding consciousness of guilt; and 3) imposed the parole revocation restitution fine. We affirm the judgment, accept the People's concession and strike the parole revocation restitution fine, and remand with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

S.W. testified that in December 2015, she was dating McMillan. He told her he planned to use his gun to rob his drug dealer, Martin Mitchell, who was an easy target because he was elderly. S.W. knew that McMillan always carried a .45-caliber gun. In the days before the incident, S.W. heard McMillan discuss his plan with a friend, W.T., multiple times. S.B., whose sister has children with McMillan, was not present for those discussions. On December 11, 2015, McMillan told S.W., "tonight's the night" for the robbery, and instructed her to clean her apartment and lay down some plastic for when they returned with some marijuana leaves. She complied.

Police review of telephone messages showed that McMillan and Mitchell exchanged messages regarding McMillan's plan to go to Mitchell's house. Mitchell initially protested that it was late, but subsequently agreed to meet McMillan.

2

S.B. testified that on the evening of December 11, 2015, McMillan sent him a text message asking for some tape because S.B. worked at a warehouse. S.B. replied that he had no tape. When S.B. returned home around midnight, McMillan asked him to take him to pick up some marijuana. S.B. drove McMillan and W.T. to Mitchell's house. S.B. did not know about McMillan's plans, and was not suspicious about a robbery, despite the fact that approximately one week earlier McMillan had mentioned that he planned on robbing a methamphetamine dealer, and S.B. had warned him against it. When S.B. drove up to Mitchell's house, McMillan got out of the vehicle and walked toward Mitchell's front door. About a minute later, W.T. returned and told S.B. about the plan to rob Mitchell. Shortly afterwards, S.B. heard gunshots and saw W.T. run toward the house. McMillan ran out of the house, fumbling with something near his waistband. W.T. followed him. They left the door wide open and got into the vehicle. S.B. drove them back to S.W.'s apartment.

S.W. testified that W.T. brought back approximately a quarter pound of marijuana. McMillan asked S.W. to leave so that he could talk with W.T. and S.B. She left for about 30 minutes.

S.B. testified that shortly after they returned to S.W.'s apartment he heard McMillan say, "All [Mitchell] had to do was what I told him, what I wanted him to do. Instead of doing what I told him to do, he ran to the back and I shot him."

S.W. testified that when she returned to her apartment, she saw McMillan change out of his blood-stained clothes and shoes. He placed them in a trash bag. S.W. saw W.T. take the bag, and assumed he would burn the clothes. S.W. gave McMillan spare clothes to wear. McMillan told S.W. the robbery went wrong because Mitchell refused to comply with his commands

3

and put up a fight. He said that Mitchell had reached for a gun; therefore, McMillan shot him six times. McMillan said that W.T. had entered Mitchell's house too late. A day or two later, S.W. saw McMillan clean his gun, which had blood inside the muzzle. He asked her for some toilet paper for that purpose, and she gave it to him and later she disposed of the toilet paper. McMillan gave the bullets to someone to dispose of them. McMillan told S.W. that S.B. was not involved in planning the robbery.

Police officers testified that on December 12, 2015, they responded to Mitchell's home to undertake a welfare check. His neighbors had heard gunshots coming from there shortly after midnight, and Mitchell did not respond to their calls later in the morning, despite the fact the two front doors of his home were wide open. Police saw blood on the walls and dried blood underneath Mitchell's body. Mitchell had suffered multiple gunshot wounds. Ballistics tests showed that six expended casings that were recovered from inside the residence had been fired from the same .45-caliber semiautomatic handgun. Marijuana plants were found in an enclosure in Mitchell's backyard.

S.B. testified that later he refused McMillan's request to take him to sell his gun. McMillan subsequently told S.B. he had already sold it.

A few days after the murder, investigators located McMillan's cell phone, which he had given to someone else. Mitchell's cell phone showed that his last contact was with a telephone number registered to McMillan. In numerous messages two months before the murder, the two discussed drug transactions. Messages from early December indicated McMillan owed Mitchell money.

A forensic pathologist determined Mitchell died of multiple gunshot wounds.

4

S.W. testified that she lied multiple times to police investigators about McMillan's role in the incident. S.W. pleaded guilty to being an accessory after a murder, and in exchange would receive a lesser sentence if she cooperated with law enforcement and testified truthfully. She had not yet been sentenced at the time of trial.

S.B. testified he was arrested and had been incarcerated for three and a half years before he pleaded guilty to robbery, home invasion, and accessory after a murder, for which he would be sentenced to three years eight months in prison. In exchange, he was required to cooperate with law enforcement and testify truthfully. He had not been sentenced at the time of trial.

The defense did not present any trial evidence.

DISCUSSION

I. *Jury Instructions Regarding Accomplice Testimony*

McMillan contends that because the jury could conclude that S.W. and S.B. were his accomplices, the court on its own motion should have instructed the jury with general principles for evaluating accomplice testimony as set forth in CALCRIM No. 334 (Accomplice Testimony Must Be Corroborated: Dispute Whether Witness Is Accomplice), CALCRIM No. 335 (Accomplice Testimony: No Dispute Whether Witness Is Accomplice), CALCRIM No. 707 (Special Circumstances: Accomplice Testimony Must Be Corroborated— Dispute Whether Witness Is Accomplice) and CALCRIM No. 708 (Special Circumstances: Accomplice Testimony Must Be Corroborated—No Dispute Whether Witness Is Accomplice). McMillan argues the court's omission was particularly prejudicial because the court instructed the jury with CALCRIM No. 301 that the testimony of a single witness can prove any fact.

The People counter that at most the evidence established S.W and S.B were accessories after the fact of murder but not accomplices; moreover, any

5

error was harmless because (1) sufficient other evidence corroborated S.W.'s and S.B.'s testimony and established McMillan's guilt, (2) the court also instructed the jury with CALCRIM Nos. 226 [Witnesses], 302 [Evaluating Conflicting Evidence], and 318 [Prior Statements as Evidence], to view the witnesses' testimony with care and caution and (3) the prosecutor argued to the jury that it should evaluate all the testimony for consistency.

Section 1111 provides: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. [¶] An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

The California Supreme Court has defined "accessories" as "persons who, after a felony has been committed, harbor, conceal or aid a principal in the felony with the intent that the principal avoid criminal liability therefor and knowing that the principal has committed the felony or been charged with or convicted thereof." (*People v. Coffman & Marlow* (2004) 34 Cal.4th 1, 103.) Accessories "are not accomplices as to whose testimony corroboration is required." [Citations.] Whether a person is an accomplice is a question of fact for the jury unless the facts and the inferences to be drawn therefrom are undisputed." (*Ibid.*) "The fact that 'the witness was prosecuted for the same offense as defendant does not alone establish her to be an accomplice [as a matter of law].' " (*People v. Tewksbury* (1976) 15 Cal.3d 953, 960.)

We conclude the trial court did not err by declining to instruct the jury regarding accomplice testimony because insufficient evidence supported those instructions. No evidence showed that either S.W. or S.B. conspired with

6

McMillan or W.T. to commit the crimes, aided or abetted their commission, shared McMillan's criminal intent, or had any knowledge of his plans to murder Mitchell. (*People v. Beeman* (1984) 35 Cal.3d 547, 560 ["an aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime"].)

Undisputed evidence established that S.W. did not participate in the robbery and the murder or share McMillan's intent to commit those crimes. Although she knew about McMillan's plan to rob Mitchell, that knowledge did not provide clear and undisputed evidence that she shared McMillan's intent. (*People v. Anderson* (2018) 5 Cal.5th 372, 411 [witnesses' "presence might establish that they *knew* of the conspiracy" but it did "not establish beyond reasonable dispute that either did anything to further the conspiracy or did so with the required *intent*"].) The extent of S.W.'s involvement in the incident is that she cleaned up her apartment for McMillan before the robbery, gave him a change of clothes after the murder, and also helped him dispose of toilet paper evidence. At most, just as her guilty plea indicated, S.W. was an accessory after the fact, and that did not implicate accomplice corroboration requirements. (*People v. Snyder* (2003) 112 Cal.App.4th 1200, 1220, citing *People v. Sully* (1991) 53 Cal.3d 1991, 1227 ["[m]erely giving assistance without sharing the perpetrator's purpose and intent establishes liability only as an accessory, not as an accomplice"].)

As to S.B., the evidence showed that his involvement in the crimes was limited to driving McMillan and W.T. to and from Mitchell's home. No evidence showed he had prior knowledge of McMillan's criminal purpose or shared his criminal intent. The evidence did not show that S.B. intended to

participate in a robbery or murder. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 90 [an individual's mere presence at the crime scene or his failure to prevent the commission of the crime is insufficient to establish aiding and abetting]; *People v. Hoover* (1975) 12 Cal.3d 875, 879 ["[m]erely aiding in the escape of a principal does not result in liability as a principal, but only as an accessory under sections 32 and 33"]; *People v. Cisneros* (1973) 34 Cal.App.3d 399, 415 ["[t]he combination of the furnishing of the gun and the driving away, in the absence of further evidence showing an intent to enter into a common undertaking to shoot [the victim], is also insufficient to create the liability for prosecution necessary to make [the witness] an accomplice"].) Moreover, after the crime, S.B. refused to aid McMillan further by giving him a ride to sell his gun. We conclude that on this record, the court did not err by failing to instruct the jury regarding accomplice testimony as to either S.W. or S.B.

Contrary to McMillan's claim, the fact that S.W. and S.B. "were originally charged in connection with this case" is not dispositive of whether they were accomplices. Even when witnesses are charged or convicted for their roles in the offenses against a particular victim, they are not considered accomplices if the record lacks evidence tending to suggest that they "aided or abetted, or otherwise facilitated, *with the requisite intent,*" the defendant's criminal actions. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 105, [witness convicted as an accessory was not an accomplice as a matter of law because they lacked the "requisite intent"]; *Cisneros, supra,* 34 Cal.App.3d at p. 415 ["neither [the witness's] act in aiding the defendant after he committed the crime, nor [his] plea of guilty to [accessory after the fact to the homicide], furnishes the basis for a finding that he was an accomplice"]; *People v. Kosta* (1910) 14 Cal.App. 696, 698 [that a witness had been jointly charged with the defendant does not render him an accomplice as a matter of law because "the

8

evidence is ample that neither of these two witnesses had any criminal or guilty connection with the appellant or the offense of which he was found guilty, and about which they gave evidence"].)

## II. *Consciousness of Guilt Instruction*

McMillan contends the court erroneously instructed the jury on consciousness of guilt with CALCRIM No. 371 [Consciousness of Guilt: Suppression and Fabrication of Evidence][2] and CALCRIM No. 372 [Defendant's Flight],[3] which were duplicative, argumentative, lessened the prosecution's burden of proof, and embodied improper permissive inferences. He specifically claims the instructions were duplicative of CALCRIM No. 223 regarding circumstantial evidence. He adds that this instructional error violated his constitutional "rights to due process, a fair trial, a jury trial, equal protection and reliable jury determinations on guilt and the special circumstance allegation."

We conclude that both instructions were appropriate in this case because sufficient evidence supported them. It is "an elementary principle of law that before a jury can be instructed that it may draw a particular

---

[2]    The court instructed the jury with CALCRIM No. 371: "If the defendant tried to hide evidence or discourage someone from testifying against him, that conduct may show that he was aware of his guilt. If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance. However, evidence of such an attempt cannot prove guilt by itself."

[3]    The court instructed the jury with CALCRIM No. 372: "If you conclude that the defendant fled or tried to flee, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to determine the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference." (*People v. Hannon* (1977) 19 Cal.3d 588, 597, disapproved on other grounds in *People v. Martinez* (2000) 22 Cal.4th 750, 762.) "A trial court properly gives consciousness of guilt instructions where there is some evidence in the record that, if believed by the jury, would sufficiently support the inference suggested in the instructions." (*People v. Bowman* (2011) 202 Cal.App.4th 353, 366; *People v. Alexander* (2010) 49 Cal.4th 846, 921.) The facts giving rise to an inference of consciousness of guilt need not be conclusively established before the instruction may be given; there need only be some evidence in the record that would sufficiently support the suggested inference. (*Alexander, supra,* at p. 921.)

McMillan's efforts to conceal or destroy incriminating evidence connecting him to the crimes demonstrated his attempt to hide evidence. He disposed of his cell phone, the contents of which were erased. He placed his bloody clothes and shoes into a trash bag and then gave it to W.T. to burn. McMillan cleaned his gun, which had Mitchell's blood inside the muzzle. McMillan disposed of the remaining bullets. McMillan also asked S.B. to give him a ride so he could sell his gun, and when S.B. refused, McMillan eventually sold the gun. These acts of suppressing evidence were more than sufficient to permit an inference of consciousness of guilt. (See *People v. Cooper* (1991) 53 Cal.3d 771, 833 [defendant disposed of shoes]; *People v. Fitzpatrick* (1992) 2 Cal.App.4th 1285, 1296 [defendant attempted to get rid of gun].)

The flight instruction was supported by evidence showing that McMillan left Mitchell's home immediately after robbing and killing him. (See *People v. Zapien* (1993) 4 Cal.4th 929, 983.) We conclude the court did

not err by instructing the jury on consciousness of guilt. (*People v. Johnson* (1992) 3 Cal.4th 1183, 1236.)

McMillan recognizes that the California Supreme Court in *People v. Nakahara* (2003) 30 Cal.4th 705, 713 has rejected his claim that the consciousness of guilt instructions are argumentative, but he claims the high court's reasoning in that case and in *People v. Kelly* (1992) 1 Cal.4th 495, 531-532 and other cases "is equally flawed." He also cites to state court decisions from eight states that "have held that flight instructions should not be given because they unfairly highlight isolated evidence." However, this court is bound by the California Supreme Court's decisions (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456), and not those of other state courts.

Based on the overwhelming evidence supporting McMillan's convictions as set forth above, even assuming the court erred by instructing the jury regarding consciousness of guilt, any error was harmless. (*People v. San Nicolas* (2004) 34 Cal.4th 614, 667 [error in giving consciousness of guilt instructions reviewed for prejudice under *People v. Watson* (1946) 46 Cal.2d 818, 837]; see *People v. Pride* (1992) 3 Cal.4th 195, 249 [where evidence of defendant's guilt was strong, giving consciousness of guilt instructions was at worst superfluous and "reversal on such a minor, tangential point is not warranted"].)

### III. *Parole Revocation Restitution Fine*

The People concede and we agree the trial court erred by imposing a $10,000 parole revocation restitution fine under section 1202.45, subdivision (c) because the court sentenced McMillan to life in prison without possibility of parole. Section 1202.45, subdivision (a), provides that the court "shall"

assess an additional parole revocation restitution fine "[i]n every case where a person is convicted of a crime and his or her sentence includes a period of parole."  Such a "fine may not be imposed for a term of life in prison without possibility of parole, as the statute is expressly inapplicable where there is no period of parole."  (*People v. Jenkins* (2006) 140 Cal.App.4th 805, 819; *People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1183.)  We strike the parole revocation restitution fine.

## DISPOSITION

The judgment of conviction is affirmed.  The matter is remanded with directions that the trial court prepare an amended abstract of judgment striking the $10,000 parole revocation restitution fine under section 1202.45, subdivision (c), and forward a certified copy to the Department of Corrections and Rehabilitation.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.


12